SUPERIOR COURT 
 
 FABIOLA GILDA TORRES RODRIGUEZ,[1] & others[2] Plaintiffs vs. GENERAL ELECTRIC COMPANY, & others[3] Defendants

 
 Docket:
 17-3351-H
 
 
 Dates:
 November 18, 2021
 
 
 Present:
 Peter B. Krupp Justice of the Superior Court
 
 
 County:
 SUFFOLK, ss.
 

 
 Keywords:
 MEMORANDUM AND ORDER ON MOTIONS TO APPLY MEXICAN LAW OF DAMAGES
 
 

 The personal representatives of four people killed when a small plane crashed in Mexico on October 22, 2015, bring claims against three United States corporations for their roles in the maintenance, inspection, and sale of the aircraft. Plaintiffs allege the crash resulted from a mechanical defect in the aircraft and assert claims for wrongful death and personal injuries predicated on negligence and breach of warranty. Defendants now move the court to apply the Mexican law on damages. For the following reasons, the motion is denied.
BACKGROUND
Defendants General Electric, Inc. (“GE”) and Rectrix MRO, Inc. (“Rectrix”) are Massachusetts corporations with principal places of business in Massachusetts. GE purchased a

-------------------------------------

[1]As personal representative of the Estate of Tomas Torres Mercado.

[2]Rocio Flores Lopez, as personal representative for the Estate of Humberto Godoy Casteñeda; Bertha Leticia Ochoa, as personal representative for the Estate of Joaquin Felipe Archundia Rodriguez; and Jose Antonio Lopez Tocaven, as personal representative of Victor Lopez Hernandez.

[3]Rectrix MRO, Inc. and Duncan Aviation, Inc. Rectrix MRO, Inc. has also filed third-party claims against Duncan Aviation, Inc.

-1-

Learjet 31A (“the aircraft”) on November 8, 2005. In 2012, GE sent the aircraft to Rectrix’s facility in Westfield, Massachusetts. Rectrix performed repairs, maintenance, and inspections on the aircraft’s pitch trim system, which included, among other things, a horizontal stabilizer and its actuator.
In July 2012, Rectrix arranged for the aircraft’s horizontal stabilizer actuator to be overhauled by Duncan Aviation, Inc. (“Duncan”), a Nebraska corporation. Duncan overhauled the actuator at its Nebraska facility before returning it to Massachusetts. Rectrix then reinstalled the horizontal stabilizer actuator on the aircraft at its Massachusetts facility. The aircraft remained in Rectrix’s care until Grupo, a Mexican construction and development company, purchased it from GE in December 2014.
Less than a year later, on October 22, 2015, the aircraft departed Toluca International Airport in Toluca, State of Mexico, Mexico, heading for Zacatecas International Airport in Morelos, Zacatecas, Mexico. The aircraft was carrying four Mexican residents: a pilot, a co-pilot, and two passengers. At approximately 34,000 feet, the aircraft experienced a sudden loss of control and descended rapidly before crashing in a corn field in Guanajuato, Mexico. All four people died. Plaintiffs allege that the crash resulted from a failure of the aircraft’s horizontal stabilizer actuator.
DISCUSSION
I. The Applicable Legal Principles
The parties agree that there is a conflict between the pertinent law of damages in Massachusetts and in Mexico. They disagree about which law governs. I must apply “the conflict-of-laws rules of Massachusetts, the forum State, in order to determine which State’s law is applicable.” Clarendon Nat’l Ins. Co. v. Arbella Mut. Ins. Co., 60 Mass. App. Ct. 492, 495

-2-

(2004) (Lenk, J.). “Massachusetts follows ‘a functional choice-of-law approach that responds to the interests of the parties, the States involved, and the interstate system as a whole.’” UBS Financial Servs., Inc. v. Aliberti, 483 Mass. 396, 405 n.12 (2019), quoting Bushkin Assocs., Inc. v. R aytheon Co., 393 Mass. 622, 631 (1985). This approach is guided by the Restatement (Second) of Conflict of Laws (1971) (“Restatement”). USB Financial, 483 Mass. at 405 n.12, quoting C larendon Nat’l, 60 Mass. App. Ct. at 496.
To determine the law that should be applied to claims for wrongful death and personal injury, the Restatement “calls for the application of the local law of the state where the injury occurred, unless, with respect to the particular issues, some other state has a more significant relationship to the occurrence and the parties.” Restatement § 175, cmt. d; Restatement § 175, cmt. a (“the law applicable to wrongful death is selected by the same principles as control selection of the law applicable to personal injuries”). See Cohen v. McDonnell Douglas Corp., 389 Mass. 327, 333 (1983) (“The law of Massachusetts is that ordinarily the substantive law governing an action of tort for physical injury is that of the place where the injury occurred. . . . [H]owever on the particular facts of a case another jurisdiction may sometimes be more concerned and more involved with certain issues”) (internal citations and quotations omitted). Because the injuries occurred in Mexico, the Restatement presumes that the Mexican law of damages will apply.
Plaintiffs argue that Massachusetts has “a more significant relationship to the occurrence and the parties” with respect to the issues they have raised. As will be explained below, I agree. “[T]he identity of the state of most significant relationship is said to depend upon the nature of the tort and upon the particular issue.” Restatement, Introductory Note to Ch. 7, Topic 1, ¶ 2. “The principles stated in [Restatement] § 6 underlie all rules of choice of law and are used in

-3-

evaluating the significance of a relationship, with respect to the particular issue, to the potentially interested states, the occurrence and the parties.” Restatement § 145, cmt. b. See Restatement § 146, cmt. c (“In large part, the answer to this question [of whether to apply the law of a state other than where the injury occurred] will depend on whether some other state has a greater interest in the determination of the particular issue than the state where the injury occurred”).
These principles include:
(a) the needs of the interstate and international systems;

(b) the relevant policies of the forum;
(c) the relevant polices of other interested states and the relative interests of those states in the determination of the particular issue;
(d) the protection of justified expectations;
(e) the basic policies underlying the particular field of law;
(f) certainty, predictability and uniformity of result; and
(g) ease in the determination and application of the law to be applied.
Restatement § 6(2). See Restatement § 6, cmt. c (factors are not exhaustive or listed in order of relative importance; “Varying weight will be given to a particular factor, or to a group of factors, in different areas of choice of law.”). Section 145(2) of the Restatement also provides that courts “applying the principles of § 6 to determine the law applicable to an issue[,]” should take into account the following contacts:
(a) the place where the injury occurred;
(b) the place where the conduct causing the injury occurred;
(c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and
(d) the place where the relationship, if any, between the parties, is centered.

-4-

II. Defendants’ Motion to Apply Mexican Law
A. Contacts
I “begin by examining the contacts which [Mexico] and Massachusetts have with the parties and the occurrence in this case.” Cosme v. Whitin Mach. Works, Inc., 417 Mass. 643, 647 (1994), citing Restatement § 145(2). As set forth above, § 145(2) directs the court to consider the place where the injury occurred, the place where the conduct causing the injury occurred, the residence and location of the parties, and the place where the parties’ relationship is centered. Although the first factor favors Mexico because it is where the injuries occurred, the second factor favors Massachusetts because it is where the allegedly defective horizontal stabilizer actuator was installed and tested and where the sale of the purportedly defective aircraft was consummated. See Restatement §§ 145(2)(a), (b). The third factor is a wash; plaintiffs and their decedents are Mexican citizens, GE and Rectrix are Massachusetts corporations with principal places of business in Massachusetts, and Duncan is incorporated in and operates out of Nebraska. Id. § 145(c).
The fourth factor, which directs the court to consider where the relationship between the parties is centered, does not apply here because the aircraft crash and resulting deaths did not occur during an ongoing relationship between the parties. Id. § 145(2)(d) & cmt. e (“When there is a relationship between the plaintiff and the defendant and when the injury was caused by an act done in the course of the relationship, the place where the relationship is centered is another contact to be considered.”). See LaPlante v. A merican Honda Motor Co., Inc., 27 F.3d 731, 741 (1st Cir. 1994) (fourth factor “is unhelpful in making a choice-of-law determination” because there is “no ‘relationship’ between the parties in the ordinary sense of the word”).

-5-

Although the three relevant factors largely off-set each other, the fact that the plaintiffs’ claims are almost entirely based on conduct that occurred in Massachusetts elevates the importance of the second factor over the first and third factors. See Restatement § 145(2) (“contacts are to be evaluated according to their relative importance with respect to the particular issue”). Therefore, on balance, the relevant contacts slightly favor Massachusetts.
B. Section 6 Factors
I next “examine the various relevant considerations provided in § 6 . . . to determine whether Massachusetts has a more significant relationship” to the occurrence and parties than Mexico. C osme, 417 Mass. at 647. As will be explained below, application of these factors also weighs in favor of applying Massachusetts law.
The first factor considers “the needs of the interstate and international systems.” Restatement § 6(2)(a). “Choice-of-law rules, among other things, should seek to further harmonious relations between states and to facilitate commercial intercourse between them . . . . [A] state should have regard for the needs and policies of other states and of the community of states.” Id. § 6, cmt. d. In this case, nothing suggests that the law applied to this matter would affect harmonious relations or commercial interactions between Massachusetts and Mexico. For that reason, the first factor under § 6 “do[es] not point . . . in any particular direction.” Cosme, 417 Mass. at 649.
The second and third factors I must consider are “the relevant policies of the forum” as compared to the relevant policies and interests of Mexico. Restatement §§ 6(2)(b), (c). The parties have submitted expert affidavits that provide some conflicting opinions as to the appropriate measure of damages under Mexican law. However, there is no dispute that Mexican law would significantly restrict the damages plaintiffs could recover. Massachusetts law, in

-6-

contrast, does not place limits on recoverable damages in wrongful death cases, and would permit plaintiffs to recover, among other things, “for the loss of the reasonably expected net income, services, protection, care, assistance, society, companionship, comfort, guidance, counsel, and advice of the decedent to the persons entitled to the damages recovered,” damages for conscious pain and suffering, and punitive damages on an appropriate showing. G.L. c. 229, §§ 2, 6.
Mexico’s statutory scheme limiting the damages of tort victims is designed to protect resident corporations from the financial burden of large damage awards. Hurtado v. Superior Court of Sacramento County, 522 P.2d 666, 671-672 (Cal. 1974) (Mexican rule limiting wrongful death damages “aimed at protecting resident defendants in wrongful death actions”); B ell Helicopter Textron, Inc. v. Arteaga, 113 A.3d 1045, 1062 & n.85 (Del. 2015) (Vaughn, J., dissenting) (“purpose of the Mexican cap on tort damages is to shield Mexican defendants from large and uncertain damage awards”). See also Marsh v. Burrell, 805 F. Supp. 1493, 1498 (N.D. Cal. 1992) (“Damages limitations are ‘intended to protect defendants from large verdicts,’ not to ‘limit the compensation of plaintiffs.’”), quoting In re Aircrash in Bali, Indonesia, 684 F.2d 1301, 1307 (9th Cir. 1982). Where, as here, none of the defendants are domiciled in Mexico, Mexico has “‘no interest in limiting recovery of their resident plaintiffs as against a nonresident’ defendant.” Browne v. McDonnell Douglas Corp., 504 F. Supp. 514, 518 (N.D. Cal. 1980), quoting In re Paris Air Crash, 399 F. Supp. 732, 746 (C.D. Cal. 1975); Hurtado, 522 P.2d at 671-

672 (Mexican rule limiting wrongful death damages is “not concerned with providing compensation for decedent’s beneficiaries”). Cf. Alpert v. Starwood Hotels, 2018 WL 5456493 at * 6 (D. Conn. Oct. 29, 2018) (Mexican law applies to claims for injuries Massachusetts plaintiff incurred during stay at Mexican resort because “Mexico has a compelling interest i[n]

-7-

regulating its tourism industry and setting its own safety standards.”), aff’d, 799 Fed. Appx. 89 (2d Cir. 2020).
Massachusetts, on the other hand, “has a significant interest in seeing that . . . its resident defendant[s] . . . be held accountable for [their] conduct, which took place in Massachusetts, and which allegedly caused the plaintiff[s] injury.” Cosme, 417 Mass. at 649. “Massachusetts ‘public policy demands that the burden of accidental injuries caused by products intended for consumption be placed upon those who market them . . . and that the user of such products is entitled to the maximum of protection at the hands of . . . those who market the products.’” Holbrook v. B oston Scientific Corp., 487 F. Supp. 3d 100, 106 (D. Mass. 2020) (square brackets omitted), quoting C osme, 417 Mass. at 648. It follows that Massachusetts has a strong interest in ensuring that corporations that sell, inspect, and repair aircraft in Massachusetts, or ship aircraft components to be installed in Massachusetts, are held responsible for their negligence and induced to employ safer policies and practices. See Restatement § 145, cmt. d (“a state has an obvious interest in regulating the conduct of persons within its territory”). The second and third factors under § 6 favor Massachusetts.
The fourth factor, concerning the protection of justified expectations, is irrelevant here because none of the parties anticipated the negligent act or formed an expectation as to which law would apply in the event of negligence. See Cosme, 417 Mass. at 650, quoting Restatement, § 145, cmt. b (“[P]ersons who cause injury on nonprivileged occasions, particularly when the injury is unintentionally caused, usually act without giving thought to the law that may be applied to determine the legal consequences of this conduct. Such persons have few, if any, justified expectations in the area of choice of law to protect, and as to them the protection of justified expectations can play little or no part in the decision of a choice of law question.”).

-8-

The fifth factor considers “the basic policies underlying the particular field of law.” Restatement § 6(2)(e). “This factor is of particular importance in situations where the policies of the interested states are largely the same but where there are nevertheless minor differences between their relevant local law rules.” Restatement § 6, cmt. h. “[A] number of policies, such as the deterrence of tortious conduct and the provision of compensation for the injured victim, underlie the tort field.” Id. § 145, cmt. b. Mexico’s compensatory damages scheme is more restrictive than the Massachusetts law of damages in tort. Applying Mexican law would frustrate the compensatory and deterrent goals of Massachusetts tort law by limiting the amount defendants must pay to compensate plaintiffs. Accordingly, the fifth factor favors application of Massachusetts law. See Burleigh v. Alfa Laval, Inc., 313 F. Supp. 3d 343, 356 (D. Mass. 2018), citing A leo v. SLB Toys USA, Inc., 466 Mass. 398, 412 & n. 19 (2013) (“The absence of a cap on the recovery of punitive damages in the Massachusetts wrongful death statute undeniably serves the purposes of condemnation and deterrence.”); Schulof v. Northeast Cellulose, Inc., 545 F. Supp. 1200, 1208 (D. Mass. 1982) (wrongful death statute serves compensatory purpose and has deterrent effect).
The sixth factor, concerning predictability and uniformity of result, does not point in either direction. This factor is of greatest importance in cases where the parties are likely to give advance thought to the legal consequences of their transactions (such as parties to a contract) and is of little significance where, as here, negligence is at issue. See Restatement § 6, cmt. I. 
The final factor concerns the ease in determining and applying the laws of interested states. I d. § 6(g). Although the parties do not dispute that Mexican law restricts compensatory damages, their conflicting expert affidavits suggest that some difference of opinion exists as to

-9-

the appropriate measure of compensatory damages under Mexican law. Accordingly, this factor, if only slightly, favors application of Massachusetts law.
Upon weighing the foregoing factors, Massachusetts has the “most significant relationship” to this controversy. The Massachusetts law of damages should apply.
ORDER
General Electric Company’s Motion to Apply Mexican Law on the Issue of Damages (Docket #52) and Third-Party Defendant Duncan Aviation, Inc.’s Motion for Application of Mexican Law to the Issue of Damages (Docket #54) are both DENIED.

@Peter B. Krupp Justice of the Superior Court

@November 18, 2021

-10-

xxz